**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| **v.** | **:** | |
| | **:** | **Criminal No. 21-cr-164 (RCL)** |
| **ANNA MORGAN-LLOYD,** | **:** | |
| | **:** | |
| **Defendant.** | **:** | |

<u>**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**</u>

If the Court accepts the guilty plea of defendant Anna Morgan-Lloyd (hereinafter "Defendant"), the United States of America respectfully files this memorandum in aid of sentencing. The Government recognizes that although the facts and the circumstances surrounding the actions of each rioter who breached the Capitol and its grounds differs, each rioter's actions were illegal, and each rioter contributed – directly or indirectly – to the violence and destruction that day.

While the Defendant did not personally engage in physical violence against law enforcement or destroy any government property, her "storm[ing] of the Capitol," was a serious violation of the law, and she must be held accountable. However, as further discussed below, the United States believes that a probationary sentence of three years, along with certain conditions, is an appropriate sentence in light of the facts and circumstances surrounding the Defendant's actions, including that she: (1) did not engage in any preplanning or coordination prior to her entry into the Capitol; (2) did not personally engage in acts of violence or destruction of property, or incite the same; (3) only remained in the Capitol for a brief period of time and in a limited area of the building; (4) cooperated with law enforcement at the time of arrest, including submitting to a voluntary interview and search of her cell phone; (5) timely admitted to her actions and accepted

responsibility; (6) expressed contrition; and (7) does not have a criminal history.

## I.  BACKGROUND

January 6, 2021, will forever be an infamous day in American history – the day on which the temple of American democracy was overrun and desecrated by rioters seeking to disrupt the lawful and peaceful transition of power.   On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol in order to certify the vote count of the Electoral College of the 2020 Presidential Election as set out in the Twelfth Amendment of the Constitution of the United States and 3 U.S.C. §§ 15-18.  A large crowd began to gather outside the Capitol perimeter as the Joint Session got underway.  Crowd members eventually forced their way through, up, and over U.S. Capitol Police barricades and advanced to the building's exterior façade.  U.S. Capitol Police officers attempted to maintain order and stop the crowd from entering the Capitol building, to which the doors and windows were locked or otherwise secured.  Nonetheless, shortly after 2:00 p.m., crowd members forced entry into the Capitol building by breaking windows, ramming open doors, and assaulting law enforcement officers.  Other crowd members encouraged and otherwise assisted the forced entry.  Shortly thereafter, at approximately 2:20 p.m. members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence, were instructed to—and did—evacuate the chambers.

The Joint Session was halted while U.S. Capitol Police and other law enforcement officers worked to restore order and clear the Capitol of the unlawful occupants.  Later that night, law enforcement regained control of the Capitol.  At approximately 8:00 p.m., the Joint Session reconvened, presided over by Vice President Pence, who had remained within the Capitol building throughout these events.  In the course of these events, approximately 81 members of the U.S. Capitol Police and 58 members of the Metropolitan Police Department were assaulted.  The

Capitol suffered millions of dollars in damage—including broken windows and doors, graffiti, and residue from pepper spray, tear gas, and fire extinguishers deployed both by crowd members who stormed the Capitol and by law enforcement officers trying to restore order.  Additionally, many media members were assaulted and had cameras and other news-gathering equipment destroyed.

On January 5th, the Defendant and her friend, Dona Sue Bissey[1], drove from Indiana to Washington, D.C.   On January 6th, they attended the "Stop the Steal" rally on the Ellipse.  When the speeches were over, the Defendant and Bissey walked with a crowd toward the Capitol building.  After arriving at the Capitol and ascending the steps of the building, the Defendant joined with other members of a mob -- Bissey, who was with the Defendant, took photos of  other members of the mob, including those in or around the scaffolding on the western front of the building.

The Defendant and Bissey then entered the Capitol building and walked through a hallway.  While inside the Capitol building, the Defendant was photographed with Bissey and two other individuals, one of whom is holding a Trump campaign flag.  Bissey later posted the photo on Facebook with the caption, "Inside the Capitol Building."

On January 6, 2021, in response to a post by another rioter, the Defendant wrote, "I'm here.  Best day ever.  We stormed the capital building me and Dona Bissey were in the first 50 people in."[2]  On January 7, 2021, Bissey posted a photo on Facebook, tagging the Defendant and another individual, and wrote, "We are home. Thank You to ALL that messaged checking in and concerned.  It was a day I'll remember forever.  I'm proud that I was a part of it!  No Shame. BTW turn off the #FakeNews."  In a comment to this post, the Defendant wrote, "That was the most

---

[1] Dona Sue Bissey was charged by Information in Case No. 21-CR-165 (TSC).
[2] Based upon review of evidence, the government does not believe that the Defendant's perception that she was one of the first fifty individuals inside the Capitol is accurate.

exciting day of my life."  The Defendant further commented, "Dona Bissey I'm so glad we were there. For the experience and memory but most of all we can spread the truth about what happened and open the eyes of some of our friends."

On January 8, 2021, Bissey posted two photos from the western front of the Capitol building.  The photo included images of members of the mob climbing the scaffolding and another of a rioter holding a stolen and broken sign that read, "Speaker of the House."  Bissey wrote on the post, "This really happened! Anna Morgan-Lloyd took the photo."

On January 11, 2021, Bissey posted a photo on Facebook which showed individuals walking down the steps of the Capitol building.  Bissey wrote, "On our way down" and tagged the Defendant.

On February 24, 2021, the Defendant was arrested pursuant to a criminal complaint and was interviewed by law enforcement.  The Defendant admitted that she had entered the Capitol and remained for approximately five minutes.[3]  The Defendant also admitted that she used her phone to take photographs in and around the Capitol building and had a photograph taken of herself, Bissey, and two other individuals.

On March 1, 2021, a four-count Information was filed charging the Defendant with Entering and Remaining in a Restricted Building, in violation of Title 18, United States Code, Section 1752(a)(1); Disorderly and Disruptive Conduct in a Restricted Building, in violation of Title 18, United States Code, Section 1752(a)(2); Violent Entry and Disorderly Conduct in a Capitol Building, in violation of Title 40, United States Code, Section 5104(e)(2)(D); and

---

[3] Based upon review of evidence, the government does not believe that the Defendant's perception that she was inside the Capitol for approximately five minutes is accurate – the government believes that she was inside the building for a little over ten minutes.

Parading, Demonstrating, or Picketing in a Capitol Building, in violation of Title 40, United States Code, Section 5104(e)(2)(G).

On May 27, 2021, the Defendant signed a plea agreement that she would enter a guilty plea to Parading, Demonstrating, or Picketing in a Capitol Building, in violation of Title 40, United States Code, Section 5104(e)(2)(G) and, in turn, the Government would recommend that the Court impose a term of probation, restitution in the amount of $500, and 40 hours of community service.

## II.   STATUTORY PENALTIES

Parading, Demonstrating, or Picketing in a Capitol Building is a violation of Title 40, United States Code, Section 5104(e)(2)(G) and carries a maximum sentence of six (6) months of imprisonment, pursuant to Title 50, United States Code, Section 5109(b); a fine of not more than $5,000, pursuant to Title 18, United States Code, Section 3571(b)(6); a term of supervised release of not more than one year, pursuant to Title 18, United States Code, Section 3583(b)(3); and an obligation to pay any applicable interest or penalties on fines and restitution not timely made.

## III.   ADVISORY GUIDELINES

Parading, Demonstrating, or Picketing in a Capitol Building is a violation of Title 40, United States Code, Section 5104(e)(2)(G), a class B misdemeanor, as defined by Title 18, United States Code, Section 3559(a)(7).  Accordingly, pursuant to Section 1B1.9 of the United States Sentencing Commission, *Guidelines Manual* (2018), the sentencing guidelines do not apply to this case.

## IV.   A SENTENCE OF PROBATION IS CONSISTENT WITH THE FACTORS SET FORTH IN  18 U.S.C. § 3553(a).

The goal of sentencing is to impose a sentence that is "sufficient, but not greater than necessary."  18 U.S.C. § 3553(a).  These factors include the nature and circumstances of the offense; the defendant's history and characteristics; and the need for the sentence to promote

respect for the law and adequate deterrence.   18 U.S.C. § 3553(a).   Here, the Section 3553(a) factors and the defendant's early acceptance of responsibility, contrition, and guilty plea support a sentence of probation.

### A.  Nature and Circumstances of the Offense

To be clear, what the Defendant initially described as "the most exciting day of [her] life" was, in fact, a tragic day for our nation – a day of riotous violence, collective destruction, and criminal conduct by a frenzied and lawless mob.   The individuals the Defendant described as "Patriots" were, in fact, rioters breaking windows, destroying government property, and assaulting law enforcement officers.   However, despite the Defendant's initial ill-considered and misguided commentary, for a variety of factors, a sentence of three years of probation is appropriate in this instance.

*First*, the Government is not aware of any evidence that Defendant's entry into the Capitol was preplanned or coordinated with anyone else, including any extremist or organized groups.

*Second,* the Government is not aware of any evidence that the Defendant incited others to commit acts of violence or destruction.

*Third,* the Government is not aware of any evidence that the Defendant engaged in any violence towards law enforcement.

*Fourth*, the Government is not aware of any evidence that the Defendant destroyed or stole any property from the Capitol.

*Fifth*, based on the Government's investigation, it appears that the Defendant remained in a limited part of the Capitol building for a limited period of time – *i.e.,* in one hallway for a little over ten minutes.   The Government is not aware of any evidence that the Defendant entered any rooms or offices in the Capitol, the Capitol Rotunda, or the Senate or House Chamber.

### B. Defendant's History and Characteristics

The Defendant is a 49-year-old woman with no prior criminal history.  The Defendant is a graduate of Ivy Tech Community College.  For 13 years following her graduation, the Defendant held full-time employment at Cook Medical, producing medical equipment used in minimally-invasive surgery.  The Defendant appears to have strong familial support – she is married, with two stepdaughters, and five grandchildren, for whom she provides childcare.   Based on a review of the Defendant's available social media and other investigative steps, the Government is not aware of the Defendant having an association with extremist groups, promoting violence or engaging in any other criminal conduct.

### C. Need to Promote Respect for the Law, to Provide Just Punishment and Afford Adequate Deterrence

A sentence of three years of probation, restitution, and community service is consistent with the goals of promoting respect for the law, punishing the Defendant, and also providing both general and specific deterrence.

*First,* between the time of her arrest and her initial appearance on the complaint, the Defendant was incarcerated for approximately two days.  As the Court knows, for an individual that has no prior criminal history or interactions with law enforcement and the penal system, any period of incarceration can be eye-opening and serve as a deterrent to future criminal conduct.

*Second*, the imposition of a term of probation and, therefore, supervision, will impose conditions upon the Defendant and serve to deter any future criminal conduct.  Specifically, the Government requests that the Court impose a three-year term of probation.  *See* 18 U.S.C. § 3561(c)(2).   Notably, had the Government requested and the Court imposed a term of incarceration, the maximum term of government supervision would have been 18 months – six months' imprisonment and one year of supervised release. *See* 50 U.S.C. § 5109(b); 18 U.S.C. §

3583.  Put simply, if the Court imposes a three-year term of probation, the Defendant would be supervised for an additional 18 months than she might otherwise not have been.  In addition to the mandatory conditions of probation,[4] the Government requests that the Court impose certain discretionary conditions,[5] including that the Defendant:

(1) refrain from possessing a firearm, destructive device or other dangerous weapon;

(2) work in community service for 40 hours as directed by the Court;

(3) report to a probation officer as directed by the court or probation;

(4) permit a probation officer to visit her at her home or elsewhere as specified by the Court;

(5) answer inquiries by a probation officer and notify the probation officer promptly of any change in address or employment;

(6) notify the probation officer promptly if arrested or questioned by a law enforcement officer; and

(7) satisfy such other conditions as the Court may impose.

*See* 18 U.S.C. §§ 3563(b)(8), (12), (15) – (18), (22).

*Third*, one important aspect of promoting respect for the law is encouraging cooperation and truthfulness with law enforcement.  Here, following her arrest, the Defendant fully cooperated with law enforcement and admitted to the full scope of her actions.  In addition to waiving her rights and agreeing to be interviewed by law enforcement, she also allowed her mobile phone to

---

[4] Mandatory conditions of probation include, among other things, that the Defendant (1) not commit another Federal, State, or local crime during the term of probation; (2) not unlawfully possess a controlled substance; (3) refrain from use of a controlled substance and submit to at least one drug test within 15 days of release on probation and at least 2 periodic drugs tests thereafter (as determined by the court) for use of a controlled substance; (4) make restitution and pay the special assessment; and (5) notify the court of any material change in Defendant's economic circumstances that might affect the Defendant's ability to pay restitution, fines or special assessments.  *See* 18 U.S.C. §3563(a).

[5] The Defendant has agreed to the imposition of all of the requested discretionary conditions.

be downloaded for substantive analysis.

*Fourth*, the Defendant has expressed contrition for her conduct.  In a letter to the Court, the Defendant stated that she was "ashamed that something meant to show support for the President had turned violent. …. At first it didn't dawn on me, but later I realized that if every person like me, who wasn't violent, was removed from that crowd, the ones who were violent may have lost the nerve to do what they did. For that I am sorry and take responsibility. It was never my intent to help empower people to act violently."  The Defendant's letter and early acceptance of responsibility indicate an important level of contrition for her actions on January 6th.[6]  Moreover, the Defendant's seeming prior bravado, as set forth in her social media postings immediately after the breach of the Capitol, appears to have been tempered by a realization of the consequences of her actions.

*Fifth*, the imposition of restitution and 40 hours of community service is an important part of promoting respect for the law and imposing a just punishment.  As of May 17, 2021, the Government has calculated that the defendant and her fellow rioters contributed to or caused approximately $1,495,326.55 in physical damage to the Capitol.  It is critical that those who caused or contributed to the destruction be responsible for the cost of repairing  and restoring the Capitol. That fiscal burden should be borne by the rioters, not innocent taxpayers.  In addition, by imposing the condition of completion of community service, the Defendant will have the opportunity to make a positive contribution to the community.

---

[6] Although the Defendant's letter states that "she didn't see anything being broken [at the Capitol]," review of video footage taken by her on January 6th appears to show unidentified individuals breaking a pane of glass in a window. The government's understanding from defense counsel is that the Defendant hadn't reviewed her video and didn't recall ever having noticed that particular action captured on her video.

### D.  Protect the Public

Based on the facts known to the Government, there is no evidence that the Defendant poses a continuing threat to the public or that she will engage in similar conduct in the future.  In addition, if the Court imposes a term of three years of probation, the Defendant will be under government supervision for a significant period of time, thereby promoting public safety.

### V.   <u>CONCLUSION</u>

For the reasons set forth above, the United States respectfully requests that the Court impose a term of three years of probation, including the mandatory and discretionary conditions set forth above, restitution in the amount of $500, and 40 hours of community service.

Respectfully submitted,

CHANNING D. PHILLIPS
ACTING UNITED STATES ATTORNEY
D.C. Bar Number 415793


By:    <u>/s/ Joshua S. Rothstein</u>
Joshua S. Rothstein
Assistant United States Attorney
N.Y. Bar Number 4453759
555 4th Street, N.W., Room 5828
Washington, D.C. 20530
Office: 202-252-7164
Joshua.Rothstein@usdoj.gov

**<u>CERTIFICATE OF SERVICE</u>**

I certify that, by virtue of the Court's ECF system, a copy of the foregoing pleading was sent to defense counsel on June 17, 2021.


*/s/ Joshua S. Rothstein*
Joshua S. Rothstein
Assistant United States Attorney